IN THE US DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ERIC LINDSEY, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No: |
| ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE ) | |
| COUNTY/KANSAS CITY, KANSAS ) | |
| As Representative of Kansas City Board of ) | |
| Public Utilities, ) | |
| 701 N. 7th St. ) | **Jury Trial Demanded** |
| Kansas City, KS 66101, ) | |
| ) | |
| Serve: Brett Deichler ) | |
| Unified Government Clerk ) | |
| 710 N. 7th Street, Suite 323 ) | |
| Kansas City, KS 66101 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff, Eric Lindsey, and for his causes of action against Defendant Unified Government of Wyandotte County/Kansas City, Kansas as Representative of Kansas City Board of Public Utilities alleges and avers as follows:

**PARTIES, GENERAL ALLEGATIONS, JURISDICTION AND VENUE**

1. Plaintiff Eric Lindsey, (hereinafter "Plaintiff" or "Lindsey") is an individual who at all relevant times was, and currently is, a resident of Kansas City, Kansas, and is employed by the Kansas Board of Public Utilities in Kansas City, Kansas.

2. Defendant Unified Government of Wyandotte County/Kansas City, Kansas (hereinafter "Defendant" or "Unified Government") is a Kansas governmental entity. The Unified Government acts as a Representative of the Kansas City Board of Public Utilities (hereinafter "BPU") and may be served by serving the Unified Government Clerk, Brett Deichler, at 710 N. 7th Street, Suite 323, Kansas City, Kansas 66101.

3. BPU is a public utility, owned by Defendant Unified Government, which provides electricity and water to approximately 66,000 customers in Wyandotte County and Johnson County, Kansas. BPU regularly conducts business in the state of Kansas and may be served by serving the Unified Government Clerk, Brett Deichler, at 710 N. 7th Street, Suite 323, Kansas City, Kansas 66101.

4. At all times relevant hereto, Plaintiff is an employee of BPU and enjoyed the protections accorded her in 42 U.S.C. §1981.

5. At all times relevant hereto, Defendant Unified Government is an employer governed by 42 U.S.C. §1981.

6. On information and belief, Defendant Unified Government employs (and at all times relevant hereto has employed) more than 200 employees.

7. Both jurisdiction and venue are proper in this court. This Court has original subject matter jurisdiction over all of Plaintiff's federal causes of action under 42 U.S.C. §1981. All unlawful employment practices and all other transactions and occurrences alleged herein were committed within Kansas.

8. Plaintiff seeks damages in excess of $75,000.00, exclusive of costs.

**FACTUAL BACKGROUND OF PLAINTIFF'S CLAIMS**

9. Plaintiff hereby incorporates paragraphs 1 through 8, and those that follow, by reference, as if fully set forth in these factual allegations.

10. Plaintiff is an African American.

11. Plaintiff was hired with BPU in approximately 2012 as a Carpenter and remains in the same position as of the date of this filing. Plaintiff has been the only African American in his department for the majority of his employment.

12. Plaintiff has witnessed and experienced discrimination and harassment due to his race. But for his race, Plaintiff would not have experienced discrimination; Plaintiff's race is the "but for cause" of the discrimination alleged herein.

13. Shortly after his hiring, Plaintiff was riding in the company vehicle with his two Caucasian coworkers, Brad Brown and Timothy Gardner. Brown asked Gardner if Gardner was racist and Gardner responded he was not and then reciprocated the question to Brown. Brown responded, "Yes, kind of."

14. Gardner would say, "Yes'em boss" in response to Plaintiff's request to pass a part needed to complete a job-related task. Plaintiff was insulted but shrugged it off.

15. Plaintiff has made multiple complaints over the course of his employment alleging race discrimination and retaliation with no results.

16. On April 11, 2019, Paul Kolenda physically took the work truck from Plaintiff after Plaintiff explained that Clayton Crouch, Plaintiff's supervisor, wanted Plaintiff to take the truck. Kolenda humiliated Plaintiff by forcing Plaintiff out of the carpenter truck on the east side of the plant and forced Plaintiff to walk back to the shop.

17. Plaintiff is consistently isolated and separated from his coworkers on jobs throughout his career.

18. On May 24, 2019, Crouch came into the carpenter shop and assigned jobs to the other carpenters and then told Plaintiff he had no jobs. A Caucasian plant helper was called to help them with a scaffold.

19. On June 11, 2019, Brown and Gardner turned off the breaker, even removing the breakers from the electrical panel, so Plaintiff could not open the garage doors, despite previous instruction by Crough to leave the garage doors cracked when the shop was dusty from sanding.

Plaintiff would always open the door due to poor ventilation within the shop, but Brown and Gardner would close the door.

20. On June 14, 2019, Plaintiff was instructed to go to the fourth floor and take down a scaffold alone without help, while Brown and Gardner were allowed to take down scaffolding together.

21. On October 31, 2019, Plaintiff reported Brown to Crouch about using wood and cutting wood from logs brought in for personal use while on company time. This included Brown selling name plates to BPU employees during company hours. Plaintiff submitted photos in support of his complaint. Nothing was done to address this issue, and Plaintiff was verbally coached by Crouch that pictures could not be taken while on BPU property.

22. On January 8, 2020, Plaintiff reported that the garage doors were being opened after Plaintiff closed them to Plant Superintendent Davin Young. Young told Plaintiff to close the doors, and Brown and Gardner continued to open them thereafter. Young said that he would come down to talk to Brown about not lifting the door up, but never did.

23. Plaintiff saw Young in Crouch's office on January 9, 2020, and inquired whether Young had talked to Brown about the garage door issue. Young became very angry at Plaintiff for asking and Young said he was not "getting into our war."

24. Plaintiff has attempted to confide in his supervisor, Crouch, about the issues Plaintiff suffers while working, only to have Brown repeat to Plaintiff what was said to Crouch in confidence.

25. Plaintiff voiced his concerns about being mistreated to Young and Crouch. Young and Crouch would acknowledge that they knew about the harassment and that they were trying to work through it.

26. It was common practice to leave the keys into the work trucks for convenience. Brown removed the keys from the carpenter's truck, and retained them, thus preventing Plaintiff from driving the truck. Plaintiff contacted Young about the issue, and Young told Brown to leave the keys in the truck.

27. On February 7, 2020, Brown and Gardner removed the key from the truck again and would not provide the key to Plaintiff when requested. Plaintiff called Crouch, and Crouch told Plaintiff he would need to walk and when Plaintiff would be assigned a job, he would be given a truck. Plaintiff has been forced to walk to many of his jobs while Brown and Gardner have never been made to walk through the plant. The carpenters have two trucks to use, and when Plaintiff inquired why the other carpenters could use the truck any time, Plaintiff was told that it was Crouch's decision.

28. On February 10, 2020, Plaintiff submitted a comprehensive complaint via email to Dennis Dumovich, Director of Human Resources. Nothing was done in response to his complaint.

29. Plaintiff has been required to work many jobs alone, including the building and installment of scaffolds in the plant, while other carpenters were able to work together or had assistance from plant helpers.

30. During Covid restrictions, employees were required to wear face masks while working. Plaintiff was reported for not wearing his mask, and threatened by supervision to wear his mask, but supervision did not require Kolenda to wear his mask.

31. While building cabinets for the administrative building, Plaintiff was threatened that Young would inspect his work to verify that Plaintiff was doing "a competent job." No other carpenters have been threatened for the quality of their work, even though the carpenter foreman, Kolenda, has the poorest quality output amongst the carpenters.

32. On September 30, 2020, Brown threw some boards onto the ground because he was upset that Plaintiff left the wood in the back of the truck. Plaintiff was forced to pick the wood up from the ground by Young and Crouch. When Plaintiff asked why he was being forced to pick the boards up from the ground, Crouch became irate and began yelling at Plaintiff, threatening to write Plaintiff up.

33. On October 2, 2020, Plaintiff submitted a written complaint to Dennis Dumovich, Human Resources Director, stating that Plaintiff is being harassed, nothing has changed since making complaints to Human Resources and that his "work environment is very hostile."

34. On November 13, 2020, Plaintiff was sent home early for taking a brief break to take a drink of water, and was told by his supervisor, Crouch, that "we don't take breaks."

35. Plaintiff submitted a complaint to Human Resources on or about November 13, 2020, concerning the harassment by supervisor Crouch. Plaintiff received an email response on November 16, 2020, that an interview would take place to investigate what happened. Plaintiff did not hear anything further until he was beckoned to appear at the main administrative building on December 30, 2020.

36. During the meeting on December 30, 2020, Dumovich did not want to discuss the matter and simply told Plaintiff that he was not to take pictures on BPU property. Plaintiff asked if they were going to talk about the situation that took place on November 13, 2020, and why Plaintiff was sent home early. Dumovich seemed irritated that Plaintiff brought up that issue.

37. On January 20, 2021, Plaintiff submitted another complaint to Dumovich and Tammy Torrez in Human Resources. Plaintiff reported that he had, once again, been forced to take down scaffolding that had been up for two months alone without help. When Plaintiff asked his supervisor, Crouch, if there was a reason why Plaintiff's coworkers did not work on projects that Plaintiff built, asked Crouch for help to complete the assigned jobs, and Crouch became very upset

and threatened to take Plaintiff to Human Resources. While it required two people to tear down the scaffolding (for apparent safety reasons), Plaintiff completed one of the jobs alone for fear of getting in trouble.

38. On January 21, 2021, Crouch informed Plaintiff that he had been reported for not wearing his face mask while in the carpenter shop and that it was required to wear a mask at all times when in the carpenter shop. Crouch then went and talked to Paul Kolenda (Caucasian), who did not have his mask on during the conversation, and Crouch never directed Kolenda to put his mask on. This happened a number of times during the mask mandate.

39. On February 21, 2022, Plaintiff was assigned to tear out a floor that contained asbestos. Plaintiff was never notified that he was exposed to asbestos. Later, Plaintiff discovered that after Plaintiff removed the flooring, painters were to come in and pour an epoxy floor. The painters were never allowed to enter the room because an employee from the control room notified supervision Asbestos was contained in the same kind of floor tiles in the control room. Plaintiff went to his supervisor immediately and asked why Plaintiff was not notified about the incident. Crouch simply asked if Plaintiff had his mask on. Plaintiff responded that he did have his mask on, but it was due to the mask mandate relating to Covid and not to protect against potential asbestos exposure.

40. On February 27, 2022, Plaintiff sent an email to Dumovich requesting additional information concerning the potential asbestos exposure. Plaintiff received no response and followed up again with Dumovich on April 4, 2022.

41. On May 5, 2022, Kolenda called Plaintiff a "retard" in front of three coal handler employees. Plaintiff reported the conduct to supervisor Davin Young who allegedly "talked" to Kolenda and said that "if any name calling was happening to stop immediately."

42. On August 25, 2022, Plaintiff spoke with Young about Tim Gardner and Brad Brown hiding tools in their personal tool bags, preventing Plaintiff from being able to use them. Plaintiff requested Young speak to them about putting the tools into the cabinet so that when they need to be used, they are readily accessible and available without having to get into someone else's personal tool bags. This was the second time Plaintiff had spoken with Young about this issue. Young told Plaintiff he would speak to Brown and Gardner about hiding tools within their personal belongings.

43. On August 26, 2022, Brown and Gardner again placed tools inside their personal tool bags, in the open, on a table. Plaintiff felt they were making a statement that nothing would happen to them for not following instructions. Plaintiff asked Gardner why he was still putting the tools inside his bag and Gardner responded he did not have to do anything. Brown said that the Plaintiff was the problem because he kept turning them into HR.

44. Later, on August 26, 2022, Plaintiff was called into a meeting with Glen Brendal and Devin Young concerning the conflict between Plaintiff, Brown, and Gardner. It was determined that Plaintiff, Brown and Gardner would no longer work together at the Nearman Power Plant. Brown and Gardner were given full accommodations to be moved after their first complaint; Plaintiff reported his concerns multiple times, over multiple years, and never received any assistance from management or Human Resources.

45. On August 30, 2022, Plaintiff submitted an email to Dumovich relaying the recent incidents and the constant harassment Plaintiff had to endure at work.

46. On September 12, 2022, and again a short time later (date unknown) Plaintiff was interviewed by external counsel about his complaint(s) of discrimination and harassment. Plaintiff was requested to send in any documentation supporting his claims of discrimination.

47. On December 20, 2022, Plaintiff was verbally informed that his complaints of racial discrimination were "not founded;" instead, "it was determined that all four carpenters failed to work harmoniously together which is a violation of BPU policy." Dumovich provided a letter to Plaintiff stating such on December 30, 2022, and stated that "all four employees have or will receive a counseling discussion and mandatory training on this subject."

48. Plaintiff reported a concern of potential harassment in January 2023 concerning the windows of his work truck having been rolled down. Human Resources claimed to have investigated the matter but determined that there was no harassment or "malicious intent."

49. Plaintiff has since been isolated and assigned to work with only his African American co-worker.

50. Plaintiff's job duties have been significantly changed since he complained to the Human Resources Department.

## COUNT I
## RACE DISCRIMINATION/RETALIATION/HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C.§1981

51. Plaintiff hereby incorporates by reference all previously stated allegations in ¶¶ 1 through 50 above.

52. The continuing series of events planned and carried out by Defendant Unified Government, as described above, are discriminatory, abusive, and harassing. But for his race, Plaintiff would not have experienced the discrimination, abuse and harassment described above.

53. Defendant's misconduct, as alleged above, constitutes racial discrimination and retaliation in violation of 42 U.S.C. § 1981.

54. But for his race, Plaintiff would not have been treated differently; his race is a "but for" causative factor.

55. The actions of Defendant described above had a materially adverse impact on Plaintiff. As a direct and proximate result of the discriminatory conduct of Defendant, Plaintiff has suffered actual damages in the form of humiliation, emotional distress and embarrassment in excess of $75,000.00.

56. The actions of Defendants Unified Government, BPU, and its employees have been willful, and in reckless disregard for the rights of Plaintiff.

57. Plaintiff is entitled to all compensatory damages, in such amounts as will be proven at trial and found to be reasonable by a jury.

58. If Plaintiff prevails on his claim, he is entitled to recover all attorneys' fees, costs, and expenses as provided by law.

WHEREFORE, Plaintiff prays for judgment, after jury trial, awarding him all compensatory damages deemed fair and reasonable by the jury; for all attorneys' fees, costs and expenses incurred by plaintiff; and for such other equitable relief as the court deems just and proper.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## DESIGNATED PLACE OF TRIAL

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Respectfully submitted,


WYRSCH HOBBS & MIRAKIAN, P.C.

_____
Sarah J. Duggan
Kansas Federal Bar Number #79092
Attorney for Plaintiff, Eric Lindsey
WYRSCH HOBBS & MIRAKIAN, P.C
1200 Main Street, Suite 2110
Kansas City, Missouri 64105
Tele: (816) 281-8733
sduggan@whmlaw.net


**THE POPHAM LAW FIRM, P.C.**

By: /s/ Bert S. Braud
Bert S. Braud, KS Bar No. 14223
712 Broadway, Suite 100
Kansas City, Missouri    64105
Telephone:    (816) 221-2288
Telecopier:    (816) 221-3999
E-Mail:    bbraud@pophamlaw.com

**ATTORNEYS FOR PLAINTIFF**

11